ON REHEARING
Connie Brown was convicted for the manslaughter of his seven-year-old daughter, Dondie Kaye, and sentenced to eight *Page 662 
years' imprisonment. Two issues are raised on appeal.
 I
The defendant argues that his motion for new trial should have been granted because of the repeated attempts of the prosecutor to establish that the defendant had problems with drugs and alcohol.
On the 17th of September, 1983, the defendant's daughter was killed when the truck in which she was riding as a passenger and which was driven by the defendant crashed into a tree. It was the prosecution's theory that the defendant was under the influence of alcohol and drugs. It is undisputed that the defendant had been drinking beer and that, at the time of the accident, his alcohol-blood level could have been as high as .09%. Only .03% alcohol was found in the defendant's blood sample. However, that sample was taken some undetermined time after the accident, and "the average rate of metabolism for alcohol is around .15%" per hour.
Gloria Brown Burnett, the defendant's ex-wife, was riding in the truck when the accident occurred. She testified without objection that it was "usual and normal" for the defendant to take "pain medicine." Immediately after taking this medication, the defendant's "speech would get slurred; he couldn't walk good, he would stumble," and he would have difficulty driving an automobile.
Mrs. Burnett indicated that, immediately prior to the date of the accident, the defendant had been taking "a great deal of medication." She testified that, the night before the accident, the defendant came home "just staggering all over the place and stumbling all over everything." The defendant told her that he "had gone to the hospital and had gotten a shot and had gotten a prescription and had gone and gotten the prescription filled." Mrs. Burnett testified that it was not unusual for the defendant to stumble around "when he's on drugs." This type of behavior "happened all the time."
Gloria Brown, the defendant's sister-in-law, testified that when she and her husband saw the defendant coming they "would hide the beer."
The conduct of the prosecutor, which is the basis for this issue, occurred during his cross examination of Dorothy Batley, of the defendant, and in his closing argument to the jury.
In cross examining Mrs. Batley, the defendant's mother, the Assistant District Attorney asked: "It's a fact, isn't it, Ms. Batley, that Connie Brown has a serious drug and alcohol problem, isn't it?" and "Isn't it a fact, Ms. Batley, that you yourself have or have attempted to have your son committed to a mental institution for drug and alcohol addiction." Before Mrs. Batley answered, the trial court sustained defense counsel's objections to both of these questions. Defense counsel did not request any curative instructions.
On cross examination of the defendant, the trial court allowed the prosecutor to ask the defendant if he had a drug and an alcohol problem at the time of the accident, and to question the defendant about his use of alcohol and drugs "the day before and the day of the accident." The trial court sustained defense counsel's objections when the prosecutor asked the defendant if he had actually been confined in a hospital because of drug and alcohol addiction prior to this accident, whether he had attempted to get any "help" for himself since the accident, and whether he had been involved in an accident subsequent to the accident in which his daughter was killed. Again, defense counsel objected but did not request any instructions by the trial court or make a motion for a mistrial.
Finally, during closing argument to the jury, the following occurred:
 "MR. McCORQUODALE [Assistant District Attorney]: I'm here to say to you that I don't believe that it's normal behavior, I don't believe it's average behavior, and I don't believe it's good behavior to mix drugs of any kind and alcohol and get behind the wheel of an automobile or a truck and drive up and down the highways *Page 663 
of this State, with or without your family in the car, because you're not endangering them — you're endangering everybody you meet —
 "MR. KEAHEY [Defense Counsel]: — I'm going to object to `everybody else' and move to exclude.
"THE COURT: I sustain that, Mr. McCorquodale."
The defendant argues that the repeated, improper and suggestive questions by the prosecutor created a prejudicial atmosphere which denied him a fair and impartial trial. This issue has not been preserved for review because it was not raised at trial. This issue was not raised in the defendant's motion for new trial but was presented in an amended motion for new trial. "The grounds urged for a new trial must ordinarily have been preserved at the trial by timely and sufficient objections." Fuller v. State, 365 So.2d 1010, 1012 (Ala.Cr.App. 1978), cert. denied, Ex parte Fuller, 365 So.2d 1013 (Ala. 1979). The trial court sustained defense counsel's objections to the prosecutor's questions which were not limited to the defendant's use of alcohol and drugs the day before and the day of the accident. No further remedial relief was requested. Generally, for occurrences during a trial to be reviewable, some action of the trial court must be invoked. If counsel does not request further action of the court beyond that taken, "(i)t will be presumed the court dealt with the matter effectively and properly." Hendry v. State, 215 Ala. 635, 637,112 So. 212 (1927). "The jurisdiction of the Court of Appeals is appellate only, and its review is limited to matters upon which action or ruling at nisi prius was invoked. Even those matters which result in `ineradicable harm' must at least be called to the attention of this court by a motion for a new trial." Harris v. State, 347 So.2d 1363, 1367 (Ala.Cr.App.), cert. denied, 347 So.2d 1368 (Ala. 1977). "[I]t is axiomatic that the trial court may not be put in error in the absence of any attempt to invoke a ruling of the court in the matters complained of." Carter v. State, 30 Ala. App. 251, 253,4 So.2d 195 (1941).
The purpose of the rule requiring objection at the trial level before alleged errors will be considered on appeal "is to give the trial court an opportunity to correct any alleged error or defect called to its attention before submission of the case to the jury." Ex parte Knight, 453 So.2d 754 (Ala. 1984). "[T]here is a prima facie presumption against error where the trial court immediately charges the jury to disregard improper remarks." Kelley v. State, 405 So.2d 728, 729
(Ala.Cr.App.), cert. denied, Ex parte Kelley, 405 So.2d 731
(Ala. 1981).
Where the trial judge sustains defense counsel's objection to a prosecutor's allegedly prejudicial comment and counsel requests no further relief, there is no adverse ruling upon which to ground a basis for error. Proctor v. State,391 So.2d 1092, 1094 (Ala.Cr.App. 1980). "The effect of our decisions is that a mere objection to already spoken words does not reach the evil aimed at, and that the court must be appealed to to exclude them from the consideration of the jury, failing which there is nothing presented for review by an exception." Lambertv. State, 208 Ala. 42, 44, 93 So. 708 (1922). "[T]he defendant's objection was sustained. He received a favorable ruling on the only action requested. Thus, there was no adverse ruling upon which error can be predicated." Stennett v. State,340 So.2d 65, 67 (Ala. 1976).
The defendant was charged with recklessly causing the death of Dondie Brown "by driving an automobile while under the influence of alcohol and/or drugs." "As a general rule, a person's general reputation for insobriety is not admissible as tending to show that he was intoxicated on a specified occasion." C. Gamble, McElroy's Alabama Evidence, § 60.03 (11) (3d ed. 1977). However, here it was "entirely relevant and competent" to show that he had been drinking or using drugs immediately prior to the time of the wreck. Crump v. State,29 Ala. App. 22, 25, 191 So. 475, cert. denied, 238 Ala. 439,191 So. 478 (1939) (where the accused was charged with *Page 664 
murder as a proximate result of operating a car under the influence of liquor, "[i]t seems to us entirely relevant and competent — perhaps, or possibly, material — to show that he had had some whiskey to drink 3 1/2 or 4 or 5 or 6 hours before the accident"). See also Wright v. State, 41 Ala. App. 684, 686,149 So.2d 835 (1963) (proper to admit testimony of defendant's drinking "several hours" before accident); Rolls v. State,35 Ala. App. 283, 287, 46 So.2d 8 (1950) (proper to show that accused intoxicated twenty minutes before and seven miles from accident). This is but a specific application of the general rule that "antecedent circumstances tending to shed light on the transaction or elucidate the facts or show preparation to commit the crime are always admissible in evidence." Ellis v.State, 244 Ala. 79, 86, 11 So.2d 861 (1943); Coats v. State,253 Ala. 290, 296, 45 So.2d 35 (1950) (State properly allowed to show on cross examination of defense witness that shortly before shooting, defendant looked like he had been drinking since it shed light on mental condition of defendant at time he killed deceased). "Immediately" is a relative term meaning "without interval of time." Mitchell v. State, 210 Ala. 457,98 So. 285 (1923) (evidence that accused was continuously drunk for two weeks before murder admissible).
In a prosecution for murder involving a vehicular homicide, "evidence of recent incidents of driving while intoxicated may be admissible to prove the intent of the accused or to show his reckless indifference to the probable consequences of his acts." Reeves v. State, 470 So.2d 1374, 1376 (Ala.Cr.App. 1985) (prior incident of driving while intoxicated which occurred less than one year prior to charged offense admissible to prove intent and to show recklessness of conduct); Palmer v. State,401 So.2d 266, 268-70 (Ala.Cr.App.), cert. denied, Ex partePalmer, 401 So.2d 270 (Ala. 1981), cert. denied, Palmer v.Alabama, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982) (five-year-old arrests for driving while intoxicated and reckless driving and two-year-old arrest for driving while intoxicated admissible).
 "If there is other evidence showing a person's intoxication at the time in issue, evidence is then admissible that he was intoxicated or drinking some short time prior to the time in issue. Even though there is other evidence of such person's intoxication at the time in issue, the courts will not admit prior acts of intoxication or drinking which are remote or not relevant to show that he was intoxicated at the time in issue."
* * * * * *
 "Even though there is no other evidence of a person's intoxication at the time in issue, evidence is admissible of such person's intoxication or acts of drinking a short time prior to the time in issue. It has been said that it is permissible to prove the person's consumption of intoxicating liquors or his intoxication within a reasonable time before the time in issue. This necessarily means that the court will exclude evidence of prior intoxication or consumption if such is too remote from the time in issue." McElroy, §§ 60.03 (2) and (3).
 II
There is a wealth of evidence to prove beyond any reasonable doubt that the defendant is guilty of manslaughter. "The consumption of a quantity of liquor or beer after the previous ingestion of some `pills' and other medication coupled with the willful operation of an automobile may constitute evidence of recklessness and disregard of human life." Commander v. State,374 So.2d 910, 915 (Ala.Cr.App. 1978), cert. quashed,374 So.2d 921 (Ala. 1979).
Here, there was evidence that the defendant was "kind of stumbling and off-balance" shortly before the wreck. It is undisputed that the defendant had two beers before the accident. There is evidence that he had received some medication for pain the night before. There is also evidence that the defendant was driving erratically. Mrs. Burnett testified that, *Page 665 
sometime before the accident and after the defendant had started driving "real fast" and "almost hit the backend of a truck," she told him "to stop the truck and let me drive or either me and the two girls were going to get out and we wasn't going to go any further with him." She also testified that, immediately before the accident, the defendant "ran completely off the other side of the road, into a ditch" and then refused to let her drive. The issue of the defendant's guilt was properly submitted to the jury. Hanners v. State, 461 So.2d 43
(Ala.Cr.App. 1984).
The judgment of the circuit court is affirmed.
OPINION SUBSTITUTED; AFFIRMED; APPLICATION FOR REHEARING OVERRULED.
All Judges concur.