Edward J. Klingel was indicted for murder, convicted of manslaughter, and sentenced to ten years' imprisonment for a homicide which occurred as the result of a head-on collision between his vehicle and the vehicle driven by Christine Pruitt on April 26, 1986. An eyewitness to the collision testified that defendant's automobile was travelling at a high rate of speed when it pulled around two other cars into the lane of oncoming traffic and struck Mrs. Pruitt's car. Mrs. Pruitt was crushed in her vehicle and was dead on arrival at a local hospital. Klingel raises four issues on appeal.
 I
First he claims that the evidence was insufficient to sustain the "recklessness" component of manslaughter. Specifically, he contends that the evidence did not support the allegation in the indictment that he was operating his automobile "under the influence of alcohol and at an excessive rate of speed into the oncoming lane of traffic." The State, however, presented evidence of all three indicators of recklessness: intoxication, speeding, and improper lane use.
Although there was no test for intoxication conducted, at least two police officers and the treating physician properly gave their opinions that, based on the odor of alcohol and the defendant's slurred speech and combative behavior, the defendant was under the influence of alcohol.
In a statement given to Huntsville police officers three days after the collision, the defendant admitted having had at least three beers and three, or possibly four, "shots" of Tequila at a party prior to the collision.
There was no error in the admission of evidence that, after the collision, the defendant appeared to be intoxicated. All the witnesses testified to observations which were made a short time after the collision, Gills v. State, 35 Ala. App. 119, 124,45 So.2d 44, cert. denied, 253 Ala. 283, 45 So.2d 51 (1950), during which time the defendant's physical condition precluded his having access to alcohol. Nagem v. City of Phenix City,488 So.2d 1379, 138283 (Ala.Cr.App. 1986); Ayers v. State,48 Ala. App. 743, 267 So.2d 533 (1972). Officer Ron Glass, the first officer to arrive at the scene of the collision, testified that defendant was found lying in the street "more or less unconscious . . . just out of it," and was taken by the paramedics within a few minutes to the emergency room. When Glass first leaned near the defendant he detected an odor of alcohol.
Three witnesses testified that, prior to the collision, a vehicle matching the description of the defendant's car "flew" by them, weaving in and out of traffic. One of the three, a Huntsville police officer, estimated the defendant's speed to be 100 m.p.h.
 II
The defendant claims that the court erred in allowing testimony that over an hour before the fatal collision, a car identical to the defendant's was observed "doing donuts" and nearly colliding with several parked automobiles in a theater parking lot. Todd Zeigler testified that the driver of the car, who matched the general description of the defendant, was "punching the gas and . . . just turning the wheel and skidding."
"Admission of evidence as to the speed or manner of operation of an automobile prior to the time of an accident is a matter for the trial court's discretion. . . . The job for the trialcourt is to look at the speed or conduct prior to the accidentand to determine if there is a high probability that itcontinued up until the accident." Washington v. State,473 So.2d 642, 643-44 (Ala.Cr.App. 1985) (quoting C. Gamble,McElroy's Alabama Evidence § 45.04 (3d ed. 1977)) (emphasis added by the Washington court). See also Powell v. State,515 So.2d 140 (Ala.Cr.App. 1986).
In Washington v. State, this Court found no abuse of discretion in the admission of evidence that 14 miles and 10 minutes before the accident the accused was speeding. On the other hand, in Holmes v. *Page 856 State, 40 Ala. App. 251, 112 So.2d 511, cert. denied, 269 Ala. 697, 112 So.2d 517 (1959), the Court of Appeals found error in the trial court's admission of evidence of speed one mile from the collision. The different results in the two cases stem from the fact that in Washington it could fairly be presumed that the accused's unsafe driving continued up until the accident ("He failed to stop at several stop signs, and, as testified to by other witnesses, he nearly ran them off the road. . . ." 473 So.2d at 644). In contrast, the testimony in Holmes regarding the accused's hazardous driving was not corroborated by other similar evidence indicating a pattern of speeding and it, therefore, raised no inference of continuation up to the time of the collision. "Had there been other and prior observations of speed at frequent intervals, it might be that the concatenation would have shown a pattern manifesting probability that Holmes was a heavy footed driver."40 Ala. App. at 255, 112 So.2d at 514.
In the present case, although the time between Todd Zeigler's observation of the defendant's unsafe driving and the collision was longer than we have found approved in any reported Alabama case, we cannot say that the trial court abused its discretion in not excluding the evidence. The State presented four other witnesses who observed the defendant's dangerous driving at frequent intervals prior to the collision. Because the State established a pattern of reckless driving beginning with the incident in the theater parking lot and continuing up to the time of the fatal collision, there was no manifest abuse of discretion in the trial court's failing to exclude evidence of defendant's earlier recklessness.
 III
All three of defendant's statements were properly admitted into evidence. The first two, made in the emergency room after the collision, were spontaneous declarations unprompted by any questioning on the part of law enforcement officers.
 "A spontaneous statement, blurted out by the accused and volunteered to a police officer prior to any questioning, is admissible against him even though he was not given the Miranda warnings. An unsolicited remark, not in response to any interrogation, does not fall within the Miranda
rule." Ervin v. State, 399 So.2d 894, 897
(Ala.Cr.App.), cert. denied, 399 So.2d 899 (Ala. 1981) (citations omitted). See Magwood v. State, 494 So.2d 124, 136 (Ala.Cr.App. 1985), affirmed, Ex parte Magwood, 494 So.2d 154 (Ala. 1986), cert. denied, [___] U.S. [___], 107 S.Ct. 599, 93 L.Ed.2d 599 (1986); Smith v. State, 489 So.2d 638, 640
(Ala.Cr.App. 1986).
The defendant's statements, containing vulgar and belligerent language, were probative of his intoxication and therefore admissible. Davis v. State, 27 Ala. App. 551, 553, 176 So. 379, cert. denied, 234 Ala. 625, 176 So. 382 (1937).
On the third day after the accident, the defendant was questioned in the hospital, in the presence of his mother, by two Huntsville police officers. The defendant had head injuries and a broken leg, and was positioned in a wheelchair with an I.V. in his arm. A nurse informed the investigating officers that the defendant had not been sedated. The officers testified that the defendant was alert, coherent, and aware of his surroundings. The trial court's finding that the defendant made a voluntary statement after proper Miranda warnings was supported by substantial evidence and will not be disturbed. See Thompson v. State, 462 So.2d 777, 778-79 (Ala.Cr.App. 1984) (fact that defendant's statement was made while he was in pain at hospital did not render confession involuntary). "The findings of the trial court as to the voluntariness of a confession, following a hearing held outside the presence of the jury, will not be disturbed on appeal unless contrary to the great weight of the evidence and manifestly wrong." Minorv. State, 437 So.2d 651, 655 (Ala.Cr.App. 1983).
 IV
The defendant's ten-year sentence is within the statutorily prescribed limits for manslaughter, see Ala. Code §§ 13A-6-3(b) *Page 857 
and 13A-5-6(a)(3). Although this Court is "generally prohibited from reviewing the propriety of a sentence which is within the statutorily prescribed limits, . . . the appellate courts may review a sentence, which, although within the prescribed limitations, is so disproportionate to the offense charged that it constitutes a violation of a defendant's Eighth Amendment rights." Ex parte Maddox, 502 So.2d 786, 789 (Ala. 1986), cert. denied, Maddox v. Alabama, ___ U.S. ___, 107 S.Ct. 404,93 L.Ed.2d 357 (1986), cert. denied, ___ U.S. ___, 107 S.Ct. 2185,95 L.Ed.2d 841 (1987). We reject this argument as having absolutely no merit whatsoever. The comments of the trial judge in sentencing the defendant reveal the justification for the ten-year sentence.
 "But the fact remains that a life was taken. And, in your case, Specialist Klingel, I have to say to you, I'm not often surprised by a jury's verdict; but, in your case, I was. Based upon the evidence, I feel that the verdict easily could have been murder. The wantonly reckless manner in which you drove your automobile on that night of April 26th demonstrated not just intoxication but an extreme and gross indifference to the value of human life. I am pleased to hear that this allegedly is an aberration in your life, but I must say to you that it is seldom that I have heard evidence of such gross and extreme indifference to the safety of others. You were very fortunate, I think, indeed, that the jury did not see the evidence in the same way that I do.
 "But Christine Pruitt was not so fortunate. She died a very horrible death as a result of your conduct. There's nothing that I can do or you can do or anyone can do to eradicate that fact, nor is there much that I can do to overlook the circumstances that brought it about. You are fortunate, also, to have many people come here — some at great distances — to speak for you today and to say kind things on your behalf, and to share your, and your parents, and your wife's, grief.
 "But someone should speak for Christine, and I must do that. And, consequently, as punishment for your senseless crime, and, hopefully, as a deterrent to others who might be inclined to conduct themselves in a similar fashion, grossly indifferent to the safety of their fellow citizens, it is the sentence of the law and the judgment of this Court that you, Edward J. Klingel, be committed to the custody of the Department of Corrections of the State of Alabama to be imprisoned in an institution designated by the State Corrections system for the term of ten years."
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.